Lindsay G. Leavitt – 029110
Lleavitt@jsslaw.com
JENNINGS, STROUSS & SALMON, P.L.C.
A Professional Limited Liability Company
One East Washington Street
Suite 1900
Phoenix, Arizona 85004-2554
Telephone: (602) 262-5911

Attorneys for Defendant

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Fernando Gastelum, | No. 2:18-cv-00143-DLR |
| Plaintiff | **RESPONSE IN OPPOSITION TO PLAINTIFF'S FEES, COSTS AND EXPENSES** |
| vs. | |
| Kalisha, LLC, | |
| Defendant | |

Defendant Kalisha, LLC ("Kalisha" or "Defendant"), through counsel, respectfully responds in opposition to Plaintiffs' Application for Fees, Costs and Expenses ("Application"), filed on February 28, 2018 [Doc. # 13], as follows:

## I.    INTRODUCTION

This Court has been asked to determine the amount of "reasonable attorney's fees" Mr. Strojnik should be awarded for drafting a copy-and-paste complaint in which the Plaintiff only prevailed on one of his five causes of action.

The Court is well aware of Mr. Strojnik and his history of ADA litigation in Arizona since 2015.[1]   In fact, the State Bar of Arizona has recently moved for an interim suspension of Mr. Strojnik's law license because the State Bar believes that

---

[1] The revisionist history described in the fee application regarding Mr. Strojnik's ADA litigation in Maricopa County is demonstrably false. Put simply, he served as lead counsel in more than 1200 ADA cases that were consolidated and collectively dismissed for lack of standing. Mr. Strojnik and his client, Advocates for Individuals with Disabilities Foundation, agreed to pay $25,000 in sanctions and agreed not to appeal the trial court's dismissal.

Mr. Strojnik "has engaged in conduct the continuation of which will result in substantial harm, loss or damage to the public, the legal profession or the administration of justice."[2] See Exhibit A. In September 2017 Arizona District Court Judge Neil Wake referred to Mr. Strojnik's litigation tactics—i.e., filing a copy-and-paste complaint and then demanding a minimum of $5,000 in attorneys' fees to settle the case—as "unethical extortion". See Exhibit B.

As more fully discussed below, the Court has ample justification to outright deny the Plaintiff's fee application because, among other reasons, the fee agreement between Mr. Strojnik and the Plaintiff is void as a matter of public policy.  In a deposition taken by undersigned counsel in November 2017, Plaintiff admitted that he receives a $350.00 flat rate for any ADA case that settles (or when money is collected from the Defendant).  At the time of the deposition Plaintiff had settled five (5) cases. The Plaintiff admitted that he did not know the amount that the cases had settled for—only that he received his $350.00 in a sealed envelope from Mr. Strojnik once the money was collected.  The language of the fee agreement between Plaintiff and Mr. Strojnik purportedly gives Mr. Strojnik "unfettered discretion in all settlement matters provided, however, that Client's consent shall be required when the settlement amount is less than $350.00 payable to Client."  At least one of those settlement agreements has been entered into evidence in another matter.  The case settled for $18,750.00. See Exhibit C.  This means Plaintiff collected less than 2% of the settlement amount with the remaining 98% presumably going to Mr. Strojnik.

The procedural history of this case is as simple as it gets. Plaintiff filed a copy-and-paste Complaint on January 14, 2018. Defendant's counsel filed a Notice of Appearance on February 15, 2018 and served an Offer of Judgment on that same day. The Offer of Judgment was accepted on February 16, 2018. Defendant did not

---

[2] The Presiding Disciplinary Judge had not yet ruled on the State Bar's Motion for Interim Suspension by the time this Response was filed with the Court.

even have to file an Answer. In spite of this, Mr. Strojnik still claims he incurred more than $8,000.00 in attorney's fees. To put this in perspective, Plaintiff filed 85 (virtually identical) ADA lawsuits between August 1, 2017 and January 30, 2018. According to Mr. Strojnik, he is entitled to collect at least $688,500.00 for simply drafting those 85 Complaints—and performing no other substantive legal work— over that six month stretch. Mr. Strojnik's fee application in this case should not be viewed in a vacuum, but rather as part of a broader narrative (and, especially, in light of Judge Wake's and the State Bar's claims that Mr. Strojnik's litigation tactics amount to unethical extortion).

Defendant urges the Court to use its discretion to outright deny Mr. Strojnik's application for fees (especially if his license to practice law has been suspended), or at the very least to reduce his fees to a "reasonable" amount that does not shock the conscience and offend the notions of fairness and equity.

## II.    FACTUAL BACKGROUND

Defendant owns and operates a Sleep Inn franchise located at 2621 South 47th Place in Phoenix, Arizona. Plaintiff is a resident of Casa Grande, Arizona who had not stayed in a Phoenix-area hotel for several years prior to being introduced to Mr. Strojnik.  Currently, he has sued more than 95 Phoenix-area hotels since July 29, 2017 claiming that he planned to stay in each of them. When asked at his deposition why his "desire" to stay in Phoenix-area hotels had suddenly increased from zero in 2015-2016 to more than 90 hotels within a six month time period, Mr. Gastelum replied "No particular reason."

The Complaint in this matter was filed on January 14, 2018, the 78th ADA complaint filed by Plaintiff since July 29, 2017.  All the Complaints are virtually identical—only a handful of paragraphs within the Complaint contain allegations unique to the Defendant.

Plaintiff's Complaint contained five claims: (1) ADA, (2) Negligence, (3)

Negligent Misrepresentation, (4) Failure to Disclose, and (5) Consumer Fraud/Common Law Fraud.  Plaintiff is only entitled to his reasonable fees for the ADA claim—there is no recovery of fees for work spent on the remaining state law tort claims.[3]

Plaintiff is in the process of retaining Paul Farber, a certified accessibility expert, to review the alleged violations at the hotel to determine whether they are valid.[4] Defendant has committed to remedy any readily achievable violations within a reasonable time period. Whether the Plaintiff actually intended to stay at Defendant's hotel, and whether the minor ADA violations at the property actually deter the Plaintiff from staying at Defendant's hotel sufficient to confer Article III standing is dubious—regardless, the expense of litigating that issue does not make economic sense for Defendant.

Plaintiff also alleged that he encountered ADA violations on the GreenTree website and during the online reservation process. Defendant does not own (or control) the GreeTree website—it is owned and controlled by GreenTree Inns Hotel Management Group, Inc. Whether Defendant, a franchisee, is actually liable for ADA violations on a website that it does not own or control (and thus, whether Defendant is even the proper defendant in this lawsuit) is a valid legal issue that, again due to its limited financial means, did not make economic sense for Defendant to litigate. However, in an analogous case, the Ninth Circuit recently held that tenants were not liable for ADA violations in areas that were exclusively under the control of the landlord. _Kohler v. Bed Bath & Beyond of California, LLC_, 780 F.3d 1260, 1266 (9th Cir. 2015). Defendant is attempting to work with GreenTree Inns Hotel Management Group, Inc. to remedy any alleged website ADA violation(s).

---

[3] Not that it matters. Plaintiff did not prevail on his tort claims.
[4] Typically less than half of the ADA violations alleged by Plaintiff in his Complaint are valid.

## II.    LEGAL ARGUMENT

### A. <u>The Court has the discretion to (and should) outright deny Plaintiff's fee application.</u>

A prevailing plaintiff under the ADA should ordinarily recover a reasonable attorney's fee *unless special circumstances would render such an award unjust*. <u>Barrios v. Cal. Interscholastic Fed'n</u>, 277 F.3d 1128, 1134 (9th Cir. 2002) (Emphasis added).

The Arizona District Court has already held that Mr. Strojnik's extortionist litigation tactics warrant an outright denial of attorney's fees.  On September 1, 2017, Judge Neil Wake of the District Court of Arizona issued an eleven page ruling against another serial ADA litigant represented by Mr. Strojnik, which culminated with the following conclusion:

> In this case, the complaint demanded a minimum of $5,000 in attorney's fees. In a simple form complaint case like this, it is impossible that the fee for preparing and filing the complaint could be $5,000. Moreover, the federal disability statute allows the award of only "a reasonable attorney's fee," not any fee the attorney may demand. <u>**No fee is the reasonable fee for an unnecessary lawsuit that a demand letter would have taken care of. A demand for a fee beyond what is reasonable is a demand without legal basis under the ADA.**</u>

<u>Advocates for Individuals with Disabilities LLC v. MidFirst Bank</u>, 2017 WL 3872419 at \*6 (D. Ariz. September 5, 2017).  See Exhibit A.[5]

Judge Wake's opinion rejecting attorneys' fees for serial ADA plaintiffs is entirely consistent with United States Supreme Court precedent.  In <u>Buckhannon Bd. and Care Home, Inc. v. West Virginia Dept. of Health and Human Resources</u>, 532 U.S. 598, 121 S.Ct. 1835 (2001), the Supreme Court found that one of the purposes

---

[5] While the ruling in <u>Advocates for Individuals with Disabilities LLC v. MidFirst Bank</u> is not binding, it certainly is persuasive. *Gustafson v. Goodman Manufacturing Company LP,* 2016 WL 1029333 at \*3 (D. Ariz. March 14, 2016).

in giving a trial court discretion to outright deny an award of attorneys' fees to a prevailing plaintiff in an ADA case is to discourage "extortionist" behavior. *Id.* at 618, 640 ("And Congress assigned responsibility for awarding fees not to automatons unable to recognize extortionists, but to judges expected and instructed to exercise 'discretion'"). Judge Wake's opinion lamented that serial ADA plaintiffs' "extortionist practices" (led by Mr. Strojnik) had become "pervasive" in Arizona.

By the time Judge Wake had issued his rejection of Mr. Strojnik's "unethical" and "extortionate" demands for $5,000, Mr. Strojnik and Mr. Gastelum had already filed more than two dozen of these ADA lawsuits demanding <u>tens of thousands in fees following service of the complaints</u>. This litigation tactic is precisely why the ADA granted (and the U.S. Supreme Court emphasized the importance of) trial courts' discretion to rein in the extortionate behavior of plaintiff's attorneys who collect millions in attorneys' fees under the guise of civil rights litigation.

The State Bar of Arizona agrees with Judge Wake's ruling and has taken the extraordinary measure of seeking an immediate suspension of Mr. Strojnik's law license because his litigation tactics in these ADA cases has caused "substantial harm, loss or damage to the public, the legal profession or the administration of justice." They also argue that Mr. Strojnik's ADA lawsuits "appear to be nothing more than vehicles for [Mr. Strojnik] to extort unreasonable attorney's fees from defendants." See Exhibit A.

The Court may also deny the Plaintiff's fee application because the underlying fee agreement between Plaintiff and Mr. Strojnik violates Ethical Rule 1.2.

ER 1.2(a) provides that:

> A lawyer shall abide by a client's decisions concerning the objectives of representation and, as required by ER 1.4, shall consult with the client as to the means by which they are to be pursued. A lawyer may take such action on behalf of the client as is impliedly authorized to carry out the representation. A lawyer shall abide by a client's decision whether to settle a matter.

Ariz. Op. 94-02 explains that a "client may not be asked to agree to representation so limited in scope that the client surrenders the right to settle his or her own matter."

The Comment to ER 1.2(a) also provides that the "decisions specified in ER 1.2(a), **such as whether to settle a civil matter, must also be made by the client."** (Emphasis added). See Exhibit D. The fee agreement between Mr. Gastelum and Mr. Strojnik gives Mr. Strojnik unfettered discretion to settle the Plaintiff's case, thus it violates ER 1.2(a). When a fee agreement in Arizona violates public policy by failing to comply with the Rules of Professional Conduct, the attorney is not entitled to any fee. *Peterson v. Anderson*, 155 Ariz. 108, 745 P.2d 166 (App. 1987).

Accordingly, Mr. Strojnik is not permitted to recover a fee in this matter because his fee agreement violates ER 1.2(a)

> **B.** **In the event the Court opts to award fees to Plaintiff, it should find that Mr. Strojnik's 12.5 hours expended and $650 hourly rate for a copy-and-paste Complaint are not justified under the *Kerr* factors.**

The ADA states that the court "in its discretion, may allow the prevailing party… a reasonable attorney's fee, including litigation expenses, and costs…" 42 U.S.C. § 12205.  The most useful starting point for determining the amount of a reasonable fee is the number of hours *reasonably* expended on the litigation multiplied by a *reasonable* hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) (Emphasis added). Trial courts are not accountants, though, and "may take into *account their overall sense of a suit*, and may use estimates in calculating and allocating an attorney's time." *Fox v. Vice*, 131 S.Ct. 2205, 2216 (2011) (Emphasis added).

Utilization of the *Kerr* factors, therefore, "provides a measuring stick whereby an appeals court can evaluate whether the district court acted within its broad discretion to enhance or reduce a fee award based on the facts of a particular case." *Holhbein v. Utah Land Resources, LLC*, 2015 WL 1413503 at *4 (D. Nevada, March 27, 2015).

The *Kerr* factors include:

(1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases. *Kerr v. Screen Extras Guild, Inc.* 526 F.2d 67, 70 (9th Cir. 1975)

The Ninth Circuit has also recognized that an initial "haircut" of 10% is warranted when the defendant makes a good faith effort to comply with the ADA once they received notice of the specific violations. *Gonzales v. City of Maywood,* 729 F.3d 1196, 1203 (9th Cir. 2013). This percentage reduction is based on an exercise of the Court's discretion and may be made "without a more specific explanation." *Id.* (citing *Moreno v. City of Sacramento,* 534 F.3d 1106, 1112 (9th Cir. 2008)).

**Time and Labor Expended**

As expressed by Judge Wake, it is "impossible" that the fees incurred for preparing a simple form copy-and-paste Complaint could amount to $5,000, let alone the $6,045 (9.3 hours at $650/hour) that Mr. Strojnik claims he incurred in preparing and filing this particular complaint.

The following are some, but not all, of the time entries that are unreasonable:
- Mr. Strojnik claims he spent 1.5 hours in an in-person meeting with Mr. Gastelum to discuss the "issues raised by the client and matters of representation."[6]

---

[6] It appears this "in person meeting" between Mr. Gastelum and Mr. Strojnik "to discuss matters of representation" is a standard entry in every case. For example, attached are three other Statements of Account provided by Mr. Strojnik in fee applications in which he bills for this same meeting. See Exhibit E. What could Mr. Strojnik and Mr. Gastelum be meeting about for 1.5 hours regarding matters of

- It was not reasonable for Mr. Strojnik to spend 1.60 hours doing a "due diligence" visit to the Defendant's hotel. This visit would have been better accomplished by an ADA expert at a much cheaper hourly rate. For example, Defendant's ADA expert Mr. Farber charges $175/hour.

- The 1.2 hours Mr. Strojnik claimed to spend reviewing the Defendant's website for violations of 28 CFR § 36.302(e) is unreasonable. A purportedly skilled ADA lawyer like Mr. Strojnik should be able to identify § 36.302(e) violations within two to three minutes—it is impossible that it would take 1.2 hours, especially considering this is the 78th ADA lawsuit filed by Mr. Strojnik alleging violations of § 36.302.(e).

- The MIDP responses (.5 hours) and Discovery Requests (.25 hours) prepared by Mr. Strojnik were unreasonable. The MIDP responses were not due until 30 days after Defendant filed its Answer and the Discovery Requests could not even be served until after both parties exchanged their MIDP responses. Because this case was resolved prior to Defendant even filing its Answer, any time allegedly spent by Mr. Strojnik preparing the MIDP responses and Discovery Requests was unreasonable and should be disregarded by the Court.

- Twenty-one (21) of the thirty-nine (39) time entries on Mr. Strojnik's Statement of Account were billed as .1 or .15 for doing mundane tasks that could have been competently performed by a legal assistant or paralegal (at a much lower hourly rate).[7]

- The Court must consider that a substantial portion of Mr. Strojnik's time was spent preparing to litigate the state tort claims Plaintiff alleged: Negligence, Negligent Misrepresentation, Failure to Disclose, Consumer Fraud and Common Law Fraud. The Plaintiff did not prevail on those claims nor is Mr. Strojnik entitled to collect fees for time spent working on those claims (which comprised 80% of the claims brought).

i. Lack of Pre-Litigation Notice

Lack of pre-litigation notice is one of the main factors the Court may consider when determining whether to *reduce the amount of attorney's fees* it awards to the

---

representation in this case that had not been discussed in the same meeting on apparently 77 previous occasions? Perhaps this meeting makes sense in the first couple of ADA cases they filed, but it is unreasonable for the 77th ADA Complaint.
[7] For example, Mr. Strojnik billed a .1 for "Review Doc 3 – Consent Form" and a separate .1 entry on that same day for "Review Doc 3-1 – Consent Form Instructions". Considering this was the 78th ADA lawsuit he has filed in Federal Court since July 29, 2017, it is unreasonable to bill several hours' worth of .1 entries.

1  "prevailing plaintiff." _Jankey v. Poop Deck_, 537 F.3d 1122, 1132 (9th Cir. 2008)

2  (Emphasis added).

> 3  A district court may, in its protraction analysis, consider whether a
> 4  plaintiff provided pre-litigation notice. Pre-litigation notice is not
>    required, and failing to provide notice is not unjust, but district courts
> 5  have discretion to consider all kinds of non-required conduct in
>    deciding whether litigants have protracted litigation.
> 6
>
> 7  While a district court may not reduce fees on the premise that the suit
>    should not have been filed at all before providing notice, it does have
> 8  discretion to determine whether failing to provide pre-litigation notice
>    resulted in unnecessary fees during the course of the litigation—that is,
> 9  fees that would have been lower had there been notice before filing.

10

11  _Jankey,_ 537 F.3d at 1132.

12  Defendant's principal, Dipesh Patel, has signed a declaration stating that he

13  would have responded to a pre-litigation notice from Mr. Gastelum and would have

14  immediately undertaken remedial efforts. See Exhibit F. While pre-litigation notice is

15  not specifically required by the ADA, it is generally the custom in civil rights

16  disputes. Pre-litigation notices can prevent both sides from incurring unnecessary

17  attorneys' fees by exploring the possibility of early resolution.   Why Plaintiff chose

18  not to provide notice to Defendant prior to filing suit is not a mystery.  The answer is

19  money—Plaintiff would not have received his $350.00 flat rate and Mr. Strojnik

20  would not have been able to claim more than ten thousand in fees and costs had they

21  provided pre-litigation notice.

22  **Novelty and Difficulty of the Issues Involved**

23  This case is routine for Mr. Strojnik—it was the 78th ADA complaint filed by

24  the Plaintiff between July 29, 2017 and January 8, 2018. The issues are

25  straightforward.  Pursuant to 28 CFR § 36.302(e), a hotel's website must allow

26  individuals with disabilities to (1) reserve accessible guest rooms online and (2) to

27  identify the accessible features of the property in enough detail so that an individual

28

with disabilities can determine whether the property meets his or her accessibility needs. The other ADA violations alleged in the Complaint are run-of-the-mill ADA violations.

The straightforwardness of this case weighs against a high fee rate and a high fee award. *See Moreno v. City of Sacramento*, 534 F.3d 1106, 1116 (holding that the district court "may properly use the simplicity of a given task as justification for a reduction in the rate for the hours spent performing that task or as a justification for a reduction in the overall rate").

Regardless, Mr. Strojnik's hourly rate of $650.00 is unreasonable on its face. According to the survey of hourly rates published in the *State Bar of Arizona 2016 Economics of Law Practice in Arizona* the median hourly rate in Arizona for a plaintiff litigation attorney with 30 – 39 years of experience is $299 and for a plaintiff personal injury attorney is $312. See Exhibit G. In other words, Mr. Strojnik's claimed rate of $650/hour is more than double the average rates charged by Arizona plaintiffs' lawyers with similar years of experience. His rate is especially unreasonable in light of the simplistic legal and procedural issues involved in this matter.

Furthermore, the 104.80 hours that Mr. Strojnik claims he devoted to "pre-filing due diligence" in July 2017 should not be apportioned to this case, the 78th ADA case he filed since conducting that pre-filing due diligence. Those 104.80 hours should have been billed to the first lawsuit he filed, *Gastelum v. MCPHX17, LLC*, 2:17-cv-02536-DGC, and not to this case (or any subsequent case) in a pro-rata fashion.

**The skill requisite to perform the legal service properly.**

A legal assistant or paralegal could have performed the vast majority of work in this case. As Mr. Strojnik concedes, the Complaint is virtually identical to the 77 he had previously filed. Mr. Strojnik's Statement of Account demonstrates that (besides the copy-and-paste Complaint) there was *no substantive legal work performed* in this case. Even if Mr. Strojnik was considered by the Court to be a

highly experienced ADA attorney—despite having lost more than 1200 ADA cases in one day—none of that experience was needed to prosecute or resolve this lawsuit.

### The preclusion of other employment by Mr. Strojnik due to acceptance of the case and his customary fee.

Mr. Strojnik concedes that representing Mr. Gastelum takes up approximately 90% of his time—together they average approximately 20 new case filings a month. Mr. Strojnik does not indicate that any of his other (non pro-bono) clients currently or in the past have ever retained his services at a rate of $650 per hour.  This factor cuts in favor of reducing his fee amount.

### Whether fee is fixed or contingent.

Pursuant to the fee agreement between Mr. Gastelum and Mr. Strojnik, Mr. Gastelum will never be personally liable to pay Mr. Strojnik's fees, even if Mr. Gastelum does not prevail in the matter.  The fee agreement states that in the event "a particular Claim does not result in a settlement or an award of costs, expenses and fees, then Attorney shall be entitled to recover his costs and expenses from the proceeds of another Claim or waive the costs and expenses at his discretion."  This factor cuts in favor of reducing Mr. Strojnik's claim for fees.

### The amount involved and the results obtained.

Defendant concedes that Plaintiff should be considered a "prevailing plaintiff" in this matter. Defendant has agreed to remedy the valid ADA violations on its property and to work with Choice Hotels to remedy the alleged violations on the website. It is important to remember, however, that Plaintiff only prevailed on one of the five claims he alleged in his Complaint. The remaining state law tort claims did not generate any damages for Plaintiff. This factor cuts in favor of reducing Mr. Strojnik's claim for fees.

### The experience, reputation, and ability of the attorneys.

While Mr. Strojnik has been practicing commercial litigation for more than 35

years, he has only been litigating ADA matters since 2015.  As to his reputation, he is widely considered to be the most controversial attorney currently practicing in Arizona. A google search of his name will reveal numerous articles, news reports, judicial opinions, and State Bar disciplinary proceedings disapproving of his ADA litigation efforts.  While he has served as lead counsel in more than 2000 ADA cases the vast majority were consolidated and dismissed by Maricopa Superior Court Judge David Talamante.  In addition, it does not appear that he has ever taken an ADA case to trial or even extensively litigated one.  This factor cuts in favor of reducing his fee amount.

### The 'undesirability' of the case.

As Mr. Strojnik concedes, these lawsuits are not popular in Arizona among the business or disability community.  This is not because the business community opposes the ADA, the current climate is such solely due to Mr. Strojnik's serial ADA litigation—more than 2000 "drive by" ADA lawsuits filed against Arizona businesses and commercial landlords since June 2015.  Because Mr. Strojnik single-handedly created the "undesirability" of litigating an ADA case in Arizona, this factor cuts in favor of reducing his fee amount.

### Awards in similar cases.

Undersigned counsel recently litigated a fee application filed by Peter K. Strojnik, Jr. (the son of Plaintiff's counsel) in an ADA "pool lift" lawsuit.  Judge Hollard reduced Mr. Strojnik Jr.'s hourly rate from $650 to $350 and awarded him $3,600 in attorney's fees and $460 in costs.  A copy of Judge Holland's opinion is attached hereto as Exhibit H.

## III.   CONCLUSION

The Court has broad discretion (and ample justification) to deny, or significantly reduce Plaintiff's fee award.  A request for $10,970.50 in fees, costs and expenses for a case that includes a copy-and-paste Complaint and *no other substantive legal work* is simply unreasonable.  Mr. Strojnik's hourly rate of $650 is also

unreasonable—so too is his claim to have spent more than 12 hours of attorney time on this matter.   Accordingly, the Defendant requests the Court outright deny (or significantly reduce) the Plaintiff's fee application.

RESPECTFULLY SUBMITTED this 21st day of March, 2018.

JENNINGS, STROUSS & SALMON, P.L.C.


By: s/  Lindsay G. Leavitt
  Lindsay G. Leavitt
  One East Washington Street, Suite 1900
  Phoenix, AZ  85004-2554
  *Defendant*


## CERTIFICATE OF SERVICE

☒ I hereby certify that on March 21, 2018, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Peter Strojnik
ADA@strojnik.com
STROJNIK, P.C.
2375 East Camelback Road, Ste. 600
Phoenix, AZ 85016

☐ I hereby certify that on March 21, 2018, I served the attached document by mail on the following, who are not registered participants of the CM/ECF System:


      s/  Tana Davis-Digeno